IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LAWRENCE RUSH, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | CASE NO. CV 02-B-1970-S |
| | } | |
| UNITED STATES PIPE AND FOUNDRY, | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

Currently before the court is a Motion for Summary Judgment filed by the defendant, United States Pipe and Foundry ("U.S. Pipe"). In his Complaint, plaintiff Lawrence Rush alleges claims against defendant U.S. Pipe for disparate treatment race discrimination, constructive discharge and retaliation under Title VII and 28 U.S.C. § 1981. In his deposition testimony, plaintiff abandoned his constructive discharge, training, demotion, evaluation, discipline, wages, and benefits claims. (Doc. 9, Tab 1 at 76-77, 99-100; Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 1.) Plaintiff also alleged "seniority" and "testing" discrimination. (Doc. 9, Tab 1 at 77-79, 81.) However, in his brief opposing summary judgment, plaintiff abandoned all of his promotion claims except for two: U.S. Pipe's decision to promote Ricky Franklin, white, to a Mechanic A position. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 1, 6.); and a retaliation claim for being transferred to the third shift after filing his EEOC charge. *Id.* at 1. (*See* Doc. 1.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted.

I.      **Factual Summary**

Plaintiff was hired by U.S. Pipe on November 25, 1986, as a Boilermaker. (Doc. 9, Tab 1, Ex. 2.) Plaintiff worked as a Boilermaker at U.S. Pipe until he resigned on October 12, 2000. (Doc. 9, Tab 1 at 26, Ex. 2.) As a Boilermaker, plaintiff did not actually use boilers, he performed layout and fitting. (Doc. 9, Tab 2 at 19.) The position of Boilermaker is one of the highest paying jobs in the plant, paying the same as welder and mechanic. (Doc. 9, Tab 1 at 43-44.)

At the time of his resignation in October 2000, plaintiff had the least seniority of the six Boilermakers. (Doc. 9, Tab 1 at 31.) Plaintiff resigned his position at U.S. Pipe because he feared he would get laid off because he had the least seniority among the Boilermakers. (*Id.* at 37.) Plaintiff believed that, under the collective bargaining agreement ("CBA"), he had the right to take the job of anyone who had not worked at U.S. Pipe as long as he had. (*Id.* at 37-38.) Therefore, plaintiff believed he would only lose his job after all employees hired after his November 25, 1986, hire date lost their jobs. (*Id.*)

Upon his resignation, plaintiff worked for a month and a half for another employer, and then took a year off. (*Id.* at 14-15.) Thereafter, plaintiff worked another sixteen months, until he resigned that position on March 25, 2003, and as of his deposition, he had not worked since. (*Id.* at 12-13.)

While working at U.S. Pipe, plaintiff worked under Ronnie Huddleston, who at the time was the Construction Foreman over Boilermakers and other personnel. (*Id.* at 9; Tab 2 at 7.) Plaintiff did not report directly to Huddleston all the time, because they had different shifts;

plaintiff also reported to Ricky Young and Larry Decker. (Doc. 9, Tab 1 at 23-24.) Plaintiff does not allege Decker and Young did anything racially motivated. (*Id.* at 38-39.) Plaintiff believes Huddleston contributed to his failure to be promoted due to his race. (*Id.* at 39-40.) Plaintiff initially maintained Huddleston denied him several jobs and discriminated against him due to his race. (*Id.* at 43-50.) To support this assertion, plaintiff relied on an alleged statement by Huddleston: "I have my men exactly where I want them at." (*Id.* at 70.) As noted above, the only disparate treatment claim that plaintiff is pursuing is plaintiff's denial of a promotion to the Mechanic A position awarded to Ricky Franklin. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 1, 6.) Plaintiff also maintains a claim for retaliation, because he was transferred to the third shift after he filed his EEOC charge, and because all the work went with him. (Doc. 9, Tab 1 at 100-102.)

Plaintiff contends he was qualified as a mechanic for the Mechanic A position because when he was hired by U.S. Pipe in 1986, he received a "Journeyman Mechanic" card from the Boilermakers classifying him as a mechanic. (*Id.* at 140-42; Tab 2, Ex. 2.) He also maintains he is qualified for the Mechanic A position, because, as he stated in his deposition, he believes his Boilermaker work is mechanic-type work; he can do everything mechanics do; and he has worked as a mechanic. (Doc. 9, Tab 1 at 36-37, 142, 180.) However, when asked: "[a]nd you said earlier that you've never worked as a mechanic; is that correct" he answered "[t]hat's right." (*Id.* at 109.) Plaintiff also admitted there are several mechanic tasks he did not or could not perform, such as a spark plug change or engine tune-up. (*Id.* at 145-146, 180-81.)

The "Journeyman Mechanic" card was not part of plaintiff's personnel file at U.S. Pipe. (*Id.* at 141.) The card is issued pursuant to the CBA, classifying all craft positions as mechanics,

and all Boilermaker A's receive a card. (Doc. 9, Tab 5 ¶ 3; Tab 6 ¶ 3.) The card classifies Boilermakers, and all other craft positions at the plant, as "Journeyman Mechanic['s]" for purposes of the CBA. (*Id.*) Article 10(K)(2) of the CBA states that "for purposes of this paragraph only, Journeyman Mechanic shall include the following jobs: Machinist A, Millwright A, Electrician A, Boilermaker A, Pipe Fitter A, Welder A, Mechanic A [and] [a]ll jobs rated Class 13 and Above." (Doc. 9, Tab 5 ¶ 3, Ex. 1; Tab 6 ¶ 3, Ex. 1.) This designation does not mean that Boilermakers or any of the other craft positions are actually qualified by U.S. Pipe as mechanics or to perform Mechanic A work. (Doc. 9, Tab 5 ¶ 3; Tab 6 ¶ 3.) In addition, "the Boilermaker Union acknowledges that the Mechanic A classification requires skill sets that are distinct and different from the Boilermaker position. A Boilermaker will only qualify to be a Mechanic A if that person has training in mechanic work on heavy machinery." (Doc. 9, Tab 5 ¶ 5; Tab 6 ¶ 5.)

Plaintiff had more seniority than Ricky Franklin. While plaintiff had been with U.S. Pipe since 1986, Franklin had only worked at U.S. Pipe since 1997. (Doc. 11, Ex. 8.) Under the CBA guidelines, when qualifications such as knowledge, training, ability, skill and efficiency are relatively equal for individuals in cases of promotion and increase or decrease in force, then seniority governs. (Doc. 11, Ex. 9.)

As mentioned above, plaintiff believed he could "roll," or replace other employees, not limited to boilermakers, who had not worked at U.S. Pipe as long as he had. (Doc. 9, Tab 1 at 37-38.) However, the CBA does not support plaintiff's belief. It states: "No Journeyman Mechanic may be "rolled" from a Journeyman Mechanic's job at any time by an employee who

-4-

is not a Journeyman Mechanic of the same craft and who has not worked as a permanent qualified Journeyman of the same craft." (Doc. 9, Tab 5, Ex. 1; Tab 6, Ex. 1.)

Plaintiff filed his EEOC charge on July 13, 1999. (Doc. 9, Tab 1, Ex. 6.) The Mechanic A position at issue in this case was posted on June 8, 1999. (Doc. 9, Tab 4 ¶ 3.) Plaintiff, Ricky Franklin, and others bid on the position. (Doc. 9, Tab 4 ¶ 3, Ex. 1.) U.S. Pipe desired a mechanic who had experience working with industrial heavy equipment. (Doc. 9, Tab 4 ¶ 5, Ex. 3.) Franklin was selected by Terry Chandler, the Maintenance Superintendent, because Chandler felt Franklin was better qualified than the other applicants based upon his prior experience as a mechanic at Drummond Coal. (Doc. 9, Tab 4 ¶¶ 2, 4, 5, Ex. 2.) Franklin worked as a Prep Plant Mechanic and as a Mechanic while at Drummond. (Doc. 9, Tab 4, Ex. 2.) Franklin was selected on June 30, 1999, for the Mechanic A position. (Doc. 9, Tab 4 ¶ 5.) Plaintiff testified he had no racial problems with Chandler. (Doc. 9, Tab 1 at 60.)

After Franklin was selected for the Mechanic A position, plaintiff had the least seniority among the Boilermakers. (*Id.* at 31.) As a result, plaintiff knew his lack of seniority dictated his transfer to the third shift. (*Id.*) Plaintiff was switched to the third shift approximately a week after filing his EEOC charge. (Doc. 9, Tab 1, Exs. 2, 6.) After plaintiff switched to the third shift, a welder on the third shift told him he brought all the work to the third shift when he arrived. (Doc. 9, Tab 1 at 100-02.) Despite the welder's assertion, plaintiff stated he was actually doing a similar amount of work on the third shift as he had done on his previous shift, i.e., his workload was the same. (*Id.* at 102.)

## II. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. Failure to Promote Race Discrimination Claim

"In order to establish a case under Title VII, a plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Plaintiff does not argue that there is direct evidence of discrimination and the court sees no such evidence in the record. Because there is no direct evidence of discrimination, plaintiff must rely upon circumstantial evidence to prove his claims. Plaintiff must establish his case under the well-established burden-shifting analysis set out in *McDonnell Douglas Co. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

1. **Prima Facie Case**

To establish a prima facie case of discrimination for failure to promote, plaintiff must show: (1) he belongs to a protected class; (2) he was qualified for and applied for the promotion in question; (3) he was rejected despite those qualifications; and (4) U.S. Pipe promoted an equally or less qualified white candidate. *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001); *McDonnell Douglas*, 411 U.S. at 802; *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)(*per curiam*). If plaintiff establishes a prima facie case of discrimination, the burden shifts to U.S. Pipe to articulate legitimate, nondiscriminatory reasons for its employment action. *Burdine*, 450 U.S. at 254; *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). U.S. Pipe's burden in articulating a legitimate, nondiscriminatory reason for its actions is exceedingly light; it is merely one of production. *Id.* at 255-57; *Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994).

If U.S. Pipe meets its burden of production, plaintiff must present "significant[ly] probative" evidence to prove that the articulated reason is merely pretext for intentional discrimination, and it is not worthy of credence. *Burdine*, 450 U.S. at 256; *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (citing *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989)). At this stage, plaintiff's obligation "merges with the ultimate burden

of persuading the court that [he] has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

Defendant argues that plaintiff fails to establish a prima facie case because he was not qualified for the position. As proof of his qualification to work as a mechanic, plaintiff points to the "Journeyman Mechanic" card he received when he first began working for U.S. Pipe in 1986, and his experience assisting other mechanics and performing mechanic work while working as a Boilermaker at U.S. Pipe. In his deposition, although he made several comments to the contrary, plaintiff testified that he believes his Boilermaker work was mechanic-type work; he can do everything mechanics do; and he has worked as a mechanic. Other than his Journeyman Mechanic card and his deposition testimony, plaintiff does not present any further evidence of his qualifications to work as a mechanic. He also did not present any additional evidence showing he is qualified as a mechanic on heavy industrial equipment.

To refute plaintiff's claim that he is qualified as a mechanic due to the "Journeyman Mechanic" card he received when he started working at U.S. Pipe in 1986, U.S. Pipe first asserts that the document was not part of plaintiff's personnel file. U.S. Pipe also presents the affidavits of two union representatives. In their almost identical affidavits, both representatives state that plaintiff's "Journeyman Mechanic" card was issued in accordance with the CBA, and does not prove he is entitled to perform mechanic work at U.S. Pipe. They state the "Journeyman Mechanic" designation does not mean Boilermakers such as plaintiff, or any of the other craft positions, are actually qualified by U.S. Pipe as mechanics, or to perform Mechanic A work. The union representatives state: "the Boilermaker Union acknowledges that the Mechanic A classification requires skill sets that are distinct and different from the Boilermaker position. A

Boilermaker will only qualify to be a Mechanic A if that person has training in mechanic work on heavy machinery." (Doc. 9, Tab 5 ¶ 5; Tab 6 ¶ 5.)

Nevertheless, for summary judgment purposes, the court will assume that plaintiff has met his burden of showing he was qualified for the Mechanic A position and therefore, established his prima facie case of discrimination with regard to the Mechanic A position awarded to Ricky Franklin.

### 2. Legitimate, Non-Discriminatory Reason

U.S. Pipe has articulated a legitimate, non-discriminatory reason for its decision to promote Ricky Franklin, instead of plaintiff to the Mechanic A position. It contends that Terry Chandler, the decisionmaker, believed Franklin was better qualified than the other applicants, including plaintiff. Specifically, it argues that Franklin had experience as a mechanic in heavy machinery while working at Drummond Coal. Franklin provided documentation of his experience prior to the selection process.

### 3. Pretext

As evidence of pretext, plaintiff contends that he was as qualified as Franklin for the Mechanic A position. Plaintiff argues that because he and Franklin were equally qualified, he should have received the transfer under the CBA due to his seniority over Franklin.

In order to establish pretext, a plaintiff must do more than simply allege that he is qualified for the position. *See Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001)(citations omitted). "Rather, [a plaintiff] must adduce evidence that the disparity in qualifications is 'so apparent as virtually to jump off the page and slap you in the face.'" *Id.*

(citations omitted). Assuming plaintiff and Franklin were equally qualified does not establish pretext. Such evidence is not proof of a disparity in qualifications "so apparent as virtually to jump off the page and slap you in the face." Any argument that plaintiff was better qualified because he had more seniority than Franklin is misplaced. Seniority is not synonymous to best qualified. *See Cofield*, 267 F.3d at 1269.

Plaintiff's primary pretext argument is that because he was equally qualified as Franklin for the Mechanic A position, his seniority entitled him the right to be awarded the Mechanic A position under the CBA. The CBA is a contractual agreement between plaintiff's union, the International Brotherhood of Boilermakers, Ironshop Builders, Blacksmiths, Forgers and Helpers, Lodge No. 583, and U.S. Pipe. CBA provides a grievance procedure for violations of the CBA. Accordingly, if plaintiff believed U.S. Pipe violated the terms of the CBA when he was not promoted, he could have filed a grievance in accordance with the terms of the CBA. Assuming U.S. Pipe failed to follow the provision of the CBA does not establish pretext. Stated differently, assuming U.S. Pipe violated the seniority provisions of the CBA when it awarded Franklin the Mechanic A position, plaintiff has offered no evidence on which a reasonable jury could find that discriminatory animus motivated U.S. Pipe to violate the terms of the CBA.

Plaintiff has not offered evidence on which a reasonable jury could find that defendant's legitimate non-discriminatory reason for the selection of Franklin over plaintiff was pretext for unlawful race discrimination. Therefore, defendant is entitled to judgment as a matter of law on plaintiff's promotion claim.[1]

---

[1] While it is not pertinent to the present case because plaintiff was not laid off, plaintiff incorrectly asserts that he has the right to displace less senior Mechanic A employees. This is not correct. The CBA does not give plaintiff the right to displace less senior employees in

## IV. Retaliation Claim

To establish a prima facie case of retaliation, plaintiff must show: (1) he engaged in protected activity; (2) U.S. Pipe was aware of his protected activity; (3) an adverse employment action occurred; and (4) the adverse action was causally related to his protected activity. *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999)(citation omitted). "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment' . . . . Conduct that falls short of an ultimate employment decision must meet 'some threshold level of sustainability . . . to be congnizable under the anti-retaliation clause.'" *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)(citations omitted). "[T]he protections of Title VII simply do not extend to everything that makes an employee unhappy." *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1242 (11th Cir. 2001)(internal quotes and citations omitted). Instead, "to prove adverse employment action in a case under Title VII's antidiscrimination clause, an employee must show a *serious and material* change in the term, conditions, or privileges of employment." *Id.* at 1239 (emphasis in original).

---

classifications other than his Boilermaker A classification. Article 10(K)(2) of the CBA states craft employees can only displace other employees in their specific craft: "[n]o Journey Mechanic may be 'rolled' from a Journeyman Mechanic's job at any time by an employee who is not a Journeyman Mechanic of the same craft and who has not worked as a permanent qualified Journeyman of the same craft." (Doc. 9, Tab 5, Ex. 1; Tab 6, Ex. 1) Following this statement, the CBA lists the various jobs included under the Journeyman Mechanic label, including Mechanic A and Boilermaker A. (*Id.*) Therefore, as an example, plaintiff cannot replace employees under the Mechanic A or Welder A classifications.

Plaintiff contends that U.S. Pipe retaliated against him when he was moved to the third shift soon after filing his EEOC charge. He also testified that a welder on the third shift told him he brought all the work to the third shift when he arrived. Plaintiff offered no evidence that his workload increased when he transferred to the third shift. In fact, plaintiff testified in his deposition that his workload did not increase and he did the same amount of work on the third shift as he did on the day shift, his previous shift. (Doc. 9, Tab 1 at 102.)

Plaintiff's argument that he was transferred to the third shift is retaliation for his protected conduct also fails. In his deposition, plaintiff acknowledged that the third shift is assigned to the Boilermaker with the least amount of seniority, which happened to be plaintiff after Franklin's transfer:

Q: . . . you said there were six boilermakers; is that correct?

A: Yes.

Q: And you had the least seniority of the six?

A: That's right.

Q: Is that what caused you to go to the third shift in 1999?

A: Yes.

Q: Who left the third shift boilermaker job, if you remember, in 1999?

A: Rick Franklin.

Q: So, when Mr. Franklin left the third shift, they needed somebody to go to the third shift?

A: That's right.

Q: And you, being the least senior person, had to go?

-12-

(Doc. 9, Tab 1 at 31.) Based on his own testimony plaintiff knew he was obligated, as the least senior Boilermaker, to fill the vacant position left open in the third shift due to Franklin's transfer. There is simply no evidence of a causal relationship between plaintiff's protected activity and his transfer to the third shift and defendant is entitled to judgment as a matter of law on plaintiff's retaliation claim.

## V.  Conclusion

For the reasons stated herein, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously with this Opinion.

**DONE** this the _7th_ day of September, 2004.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge